# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## WESTERN DIVISION

| | |
|---|---|
| REPONSA TOLBERT, *pro se*, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
|   vs. | )     7:17-cv-00873-LSC |
| | ) |
| MERCEDES-BENZ U.S. | ) |
| INTERNATIONAL, INC., | ) |
| | ) |
|     Defendant. | ) |
| | ) |

### MEMORANDUM OF OPINION

Plaintiff Reponsa Tolbert ("Tolbert" or "Plaintiff") filed this action against Mercedes-Benz U.S. International, Inc. ("MBUSI") asserting claims for race, sex, and age discrimination with respect to promotions and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and the Civil Rights Act of 1866, 42 U.S.C. § 1981a ("§ 1981"). Before the Court is MBUSI's motion for summary judgment (doc. 25).[1] The motion has been briefed and is ripe for review. For the reasons stated below, MBUSI's motion for summary judgment (doc. 25) is due to be granted.

---

[1]     Tolbert's retaliation claim against MBUSI is the only claim remaining before this Court. (Docs. 24 & 29.)

## I.  BACKGROUND[2]

MBUSI hired Tolbert as a logistics Team Member in October 1996. MBUSI then promoted Tolbert to a logistics Team Leader position in June 1998. In 2012, Tolbert began applying for promotion to a Group Leader position. However, Tolbert claims that while she was seeking promotion, positions were not being posted and Caucasians and/or younger individuals were being selected for promotion instead of her. Because she believed these decisions were discriminatory, Tolbert filed an EEOC charge in September 2013.

In November 2014, Tolbert suffered a fall at work and was injured. MBUSI safety personnel and a paramedic responded to the incident. Tolbert was then taken to MBUSI's on-site medical office. Once at the office, Tolbert's injuries were evaluated by the paramedic. The paramedic told Tolbert her elbow was broken. The paramedic then iced Tolbert's elbow and placed it in a sling. MBUSI's

---

[2]   The facts as presented in this section are taken only from statements of fact in the parties' briefs supported by record evidence. While Tolbert includes many unsupported allegations concerning the conduct of MBUSI, bare allegations not supported by materials in the record are insufficient to create a material dispute sufficient to overcome summary judgment. *See* Fed. R. Civ. P. 56(c); *see also* Fed. R. Civ. P. 56(e) Nevertheless, all reasonable doubts about the facts have still been resolved in favor of Tolbert. *See Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir.2002). These are the "facts" for summary judgment purposes only. They may not be the actual facts. *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir.1994).

medical staff then asked Tolbert to wait for the plant doctor to arrive for further assessment. However, MBUSI's plant doctor was not scheduled to arrive for another two hours. Tolbert did not want to wait for the plant doctor to arrive, so she requested to leave and drive herself to the hospital. When Tolbert was asked to sign a statement acknowledging that she was refusing treatment, she refused to sign it and elected instead to stay at MBUSI to receive treatment. Approximately 50 minutes after she was injured, given an initial diagnosis, and limited treatment, Tolbert was taken to Druid City Hospital ("DCH") in one of MBUSI's security trucks. Although MBUSI initially called an ambulance for Tolbert, it cancelled the ambulance because Tolbert's injuries were not deemed life threatening. Due to traffic conditions, it took MBUSI's security trucks a little over 40 minutes to make the approximately 20 mile drive to DCH.

After her accident, Tolbert received short term disability ("STD") benefits and leave from MBUSI for her injuries. Although Tolbert received these benefits, her workers' compensation request was denied because her injury was not considered an on the job injury. However, Tolbert's STD benefits and leave were set to expire before she was capable of returning to work. Therefore, Tolbert contacted MBUSI in December 2014 about extending her STD leave and benefits. Tolbert's request for an extension of STD benefits was denied because her

paperwork was incomplete. Consequently, Tolbert's STD benefits lapsed on January 6, 2015. On January 20, 2015, Tolbert filed a second charge with the EEOC alleging that MBUSI's failure to transport her in an ambulance and request for her to sign a statement acknowledging she was refusing treatment were retaliatory acts. In February 2015, Tolbert's STD benefits were restored because her doctor provided the required paperwork.

Although Tolbert continued to work for MBUSI, she filed for Chapter 13 Bankruptcy on August 2, 2016, as a result of her medical bills from the fall. (Doc. 26 Ex. A at 18-19). In her bankruptcy petition, Tolbert disclosed that she "may have a workman's comp action against Mercedes for injury to her arm." (*Id.* at 137.) Tolbert did not disclose her EEOC charges.

In 2017, Tolbert began to experience symptoms indicating carpal tunnel syndrome (CTS). Although she was initially misdiagnosed by an occupational therapist employed by MBUSI, MBUSI's doctor correctly diagnosed Tolbert with CTS a few weeks later. Tolbert filed this action in May 2017. Even though Tolbert's bankruptcy was ongoing, Tolbert did not update her assets schedule to disclose this action or disclose her EEOC charges. Despite the ongoing litigation, Tolbert continued to receive positive ratings for her work at MBUSI and was granted additional STD leave and benefits in March 2018 for treatment of her

CTS. Tolbert's request for workers' compensation benefits for her CTS was denied.

## II.   STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact[3] and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute is genuine if "the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Id.* A genuine dispute as to a material fact exists "if the nonmoving party has produced evidence such that a reasonable factfinder could return a verdict in its favor." *Greenberg v. BellSouth Telecomms., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (quoting *Waddell v. Valley Forge Dental Assocs.*, 276 F.3d 1275, 1279 (11th Cir. 2001)). The trial judge should not weigh the evidence, but determine whether there are any genuine issues of fact that should be resolved at trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

In considering a motion for summary judgment, trial courts must give deference to the non-moving party by "view[ing] the materials presented and all factual inferences in the light most favorable to the nonmoving party." *Animal*

---

[3]     A material fact is one that "might affect the outcome of the case." *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1049 (11th Cir. 2015).

*Legal Def. Fund v. U.S. Dep't of Agric.*, 789 F.3d 1206, 1213–14 (11th Cir. 2015) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)). Although "pro se complaints are entitled to a liberal interpretation by the courts, ... a pro se litigant does not escape the essential burden under summary judgment standards of establishing that there is a genuine issue as to a fact material to his case in order to avert summary judgment." *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990) (emphasis added). "[U]nsubstantiated assertions alone are not enough to withstand a motion for summary judgment," *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1529 (11th Cir. 1987), as the Court can rely only on facts which are properly supported by the evidence, and "set forth by affidavit or otherwise." *Lewis v. Casey*, 518 U.S. 343, 358 (1996). Therefore, Conclusory allegations and "mere scintilla of evidence in support of the nonmoving party will not suffice to overcome a motion for summary judgment." *Melton v. Abston*, 841 F.3d 1207, 1220 (11th Cir. 2016) (per curiam) (quoting *Young v. City of Palm Bay, Fla.*, 358 F.3d 859, 860 (11th Cir. 2004)).

In making a motion for summary judgment, "the moving party has the burden of either negating an essential element of the nonmoving party's case or showing that there is no evidence to prove a fact necessary to the nonmoving party's case." *McGee v. Sentinel Offender Servs., LLC*, 719 F.3d 1236, 1242 (11th

Cir. 2013). Although the trial courts must use caution when granting motions for summary judgment, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

## III. DISCUSSION

### A. RETALIATION UNDER TITLE VII AND § 1981

#### i. ADMINISTRATIVE EXHAUSTION

Valid claims under Title VII must meet all requirements for administrative exhaustion. *Sanchez v. Standard Brands, Inc.,* 431 F.2d 455, 460 (5th Cir. 1970). Administrative exhaustion under Title VII requires filing a timely charge with the EEOC. *Id.* If, as in this case, the EEOC declines to bring its own civil action against the employer, it will issue a Notice of Right to Sue to the employee. 29 C.F.R. § 1601.28(b)(1). Upon receipt of this notice, the employee has a period of ninety days to bring suit against the employer. 42 U.S.C. § 2000e-5(f)(1). The Eleventh Circuit has held that a judicial complaint is limited by claims that are "like or related to, or grew out of, the administrative allegations." *Basel v. Sec'y of Defense*, 507 Fed. App'x. 873, 876 (11th Cir. 2013) (*citing Gregory v. Georgia Dept. of Human Resources*, 355 F.3d 1277, 1280 (11th Cir. 2004)). This Circuit has also "noted that judicial claims are allowed if they 'amplify, clarify, or more clearly focus' the

allegations in the EEOC complaint, but has cautioned that allegations of new acts of discrimination are inappropriate." *Gregory*, 355 F.3d at 1279-80 (citing *Wu v. Thomas*, 863 F.2d 1543, 1547 (11th Cir. 1989)). Although a plaintiff cannot add new acts of discrimination, acts of retaliation that "grow[] out of an administrative charge that is properly before the court" are not barred. *See Gupta v. East Texas State Univ.,* 654 F.2d 411 (5th Cir. Unit A Aug. 1981)[4]

MBUSI argues that many of Tolbert's allegations of retaliation are untimely and are due to be dismissed because of Tolbert's failure to exhaust her administrative remedies in regard to these actions. MBUSI specifically claims that the following allegations are not properly before this Court because Tolbert did not include them in her EEOC charges: (1) Tolbert's 2012 Informal Complaint, (2) MBUSI's denial of Tolbert's STD benefits extension after her November 2014 fall, (3) MBUSI's alleged denials of Tolbert's workers' compensation claims, and (4) MBUSI's initial misdiagnosis of Tolbert's CTS.

Even though Tolbert's EEOC charges do not list the aforementioned actions, they nonetheless relate to and grow out of the charges in Tolbert's

---

[4]     In *Bonner v. City of Pritchard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binging precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

administrative filings because they would have likely been included in the EEOC's investigation into Tolbert's allegations of discrimination.[5] *See Sanchez*, 431 F.2d at 466 (noting that "the 'scope' of the judicial complaint is limited to the 'scope' of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination."). Therefore, none of Tolbert's allegations are due to be dismissed as untimely.

### ii. Tolbert's *Prima Facie* Case

Retaliation claims that rely on circumstantial evidence are analyzed using the burden-shifting paradigm established in *McDonnell Douglas Corp. v. Green*, 411, U.S. 792, 793 (1973). *See Bryant v. Jones*, 575 F.3d 1281, 1307 (11th Cir. 2009). Under this framework, the plaintiff first bears the burden of establishing her *prima facie* case. To establish a *prima facie* case for retaliation under § 1981 or Title VII, a plaintiff must show that (1) she was engaged in statutorily protected activity; (2) she suffered an adverse employment action; and (3) a causal link exists between the protected activity and the adverse employment action. *Furcron v. Mail Ctrs. Plus, LLC*, 843 F.3d 1295, 1310 (11th Cir. 2016); *see also Standard v. A.B.E.L. Servs., Inc.*,

---

[5] Tolbert received her right to sue letter for her September 2013 EEOC Charge on May 1, 2017. The right to sue letter for Tolbert's January 2015 EEOC charge was issued on March 3, 2017.

161 F.3d 1318, 1330 (11th Cir. 1998) ("Both of these statutes [i.e., section 1981 and Title VII] have the same requirements of proof and use the same analytical framework.").

Once a plaintiff establishes a *prima facie* case, *McDonnell Douglas* next requires defendants to meet their "burden of producing a legitimate, non-discriminatory reason for the challenged employment action." *Denney v. City of Albany*, 247 F.3d 1172, 1183 (11th Cir. 2001). Finally, "[i]f such a reason is produced, a plaintiff then has the ultimate burden of proving the reason to be a pretext for unlawful discrimination." *Id.*

Tolbert has failed to demonstrate a *prima facie* case because she cannot establish a causal link between her statutorily protected activity and the alleged adverse employment actions. Tolbert's filing of an EEOC charge is a statutorily protected activity. 42 U.S.C. § 2000e–3(a). Additionally, making an informal complaint that "explicitly or implicitly communicate[s] a belief that [the conduct suffered by the plaintiff] constitutes unlawful employment discrimination" is a statutorily protected activity. *Furcron*, 843 F.3d at 1311.

In her alleged 2012 informal complaint[6], Tolbert complained to an unidentified co-worker about a "Caucasian male being awarded a position without said position being posted to the whole department." (Doc. 13 ¶¶ 17, 41, 66.)Taking this complaint in the light most favorable to the Plaintiff, Tolbert's complaint implicitly communicated that the practice of not posting positions constituted unlawful employment discrimination. Nevertheless, a plaintiff making an informal complaint must also demonstrate that she "had a good faith, reasonable belief that the employer was engaged in unlawful employment practices." *Id.* (quoting *Little v United Techs., Carrier Transicold Div.*, 103 F.3d 956, 960 (11th Cir. 1997)). This belief must be "objectively reasonable in light of the facts and record presented." *Little*, 103 F.3d at 960. Tolbert has not presented evidence indicating that her belief was objectionably reasonable. Accordingly, even if this Court were to consider the 2012 complaint, it could not be seen by a reasonable jury as protected activity.

---

[6] The Court has not been presented with any evidence of this complaint other than MBUSI's reference to the alleged complaint in its brief. Although Tolbert asserts in her summary judgment response that there is an email that corroborates her allegations of an informal complaint in 2012, the Court cannot rest its decision on unsupported factual assertions. *See Helmich v. Kennedy*, 796 F.2d. 1441, 1443 (11th Cir.1986).("[s]tatements of fact in a party's brief, not in proper affidavit form, cannot be considered in determining if a genuine issue of material fact exists.")

To prove an adverse employment action in the context of a retaliation claim, the plaintiff must show that a reasonable employee would have found the challenged action materially adverse, meaning "it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006); *accord Crawford v. Carroll*, 529 F.3d 961, 974 (11th Cir. 2008). An adverse employment action need not be as serious as outright termination. It may include "adverse actions which fall short of ultimate employment decisions." *Wideman v. Wal-Mart Stores, Inc.*, 141 F.3d 1453, 1455-56 (11th Cir. 1998). However, the Supreme Court has stressed that the exercise of statutorily protected activity does not "immunize [an] employee from those petty slights or minor annoyances that often take place at work that all employees experience." *Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 68. This Court's determination of whether the defendant's actions were materially adverse is inherently fact-specific and "depend[s] upon the particular circumstances" of the case. *Id.* at 69; s*ee also Crawford*, 529 F.3d at 973 n. 13 (11th Cir.2008) (noting that *Burlington Northern* "strongly suggests that it is for a jury to decide whether anything more than the most petty and trivial actions against an employee should be considered 'materially adverse' to him and thus constitute adverse employment actions").

Tolbert alleges that the following events constitute adverse employment actions: (1) Transporting her in a security truck to DCH after November 2014 accident at the plant, (2) MBUSI's asking her to sign a statement acknowledging that she was refusing treatment for her November 2014 injury, (3) Denial of her request for an extension of STD benefits, (4) Denial of workers' compensation benefits, and (5) a misdiagnosis of Carpal Tunnel Syndrome (CTS).

Tolbert does not explain why these actions are materially adverse. Instead, Tolbert questions the reasonableness of MBUSI's decisions and asserts that these actions were committed in retaliation. While a delay in medical treatment may in some circumstances rise to the level of deterring a reasonable employee from bringing a charge of retaliation, the facts before this Court do not rise to the level of a materially adverse action. *See Wideman*, 141 F.3d at 1455-56 (finding that needless delay of required medical treatment to an employee experiencing a severe allergic reaction in combination with other retaliatory acts could rise to the level of an adverse action).

Here, Tolbert initially tried to leave the plant for more immediate treatment of her elbow. However, after MBUSI asked her to sign a statement acknowledging she was refusing treatment, Tolbert chose to remain at the plant and be evaluated by the plant doctor. Despite any delay from Tolbert's decision to stay, the

undisputed facts indicate that Tolbert received treatment by a paramedic immediately after her fall and that she was being transported to the hospital approximately 50 minutes after her fall. Although Tolbert claims that both MBUSI's request and this delay were improper, she has not presented any evidence indicating that these actions denied her timely and appropriate medical treatment for her broken elbow.

Additionally, Tolbert's argues that there was retaliatory delay in her arrival at the hospital and exacerbation of her injuries because she was transported in a security truck instead of an ambulance. Tolbert has not offered evidence corroborating her allegations that the ride between the plant and the hospital would have been faster if in an ambulance. Nor has Tolbert presented any further evidence that the increase in pain and blood pressure she experienced in the security truck would have been prevented by travel in an ambulance. Therefore, the fact that MBUSI did not transport Tolbert to the hospital in her preferred method of transport in this circumstance represents nothing more than a petty slight or minor annoyance and a reasonable employee would not be dissuaded from maintaining or filing a discrimination claim by this action.

Further, the undisputed record indicates that the treatment MBUSI provided to Tolbert was part of its standard protocol at the plant. Although Tolbert

attempts to underscore the propriety of MBUSI's policies, the undisputed facts indicate that Tolbert received timely medical treatment, albeit not in the manner or at the speed Tolbert desired. The Eleventh Circuit has observed that Title VII's protections "simply do not extend to everything that makes an employee unhappy." *Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1242 (11th Cir. 2001) (internal quotations and citation omitted). Therefore, in reviewing the evidence and considering it in the light most favorable to Tolbert, the Court concludes that a reasonable employee under the circumstances would not be dissuaded from maintaining a discrimination claim by being asked to sign such a statement and/ or being transported to a hospital in a security truck.

Tolbert also claims that the initial misdiagnosis of her CTS was an adverse action. Tolbert was initially told that she did not have CTS by an occupational therapist working for MBUSI. However, MBUSI's plant doctor corrected Tolbert's diagnosis a few weeks later. Tolbert again offers no argument as to how this delay in diagnosis would constitute a materially adverse action or dissuade a reasonable employee from maintaining a claim of retaliation. Therefore, a reasonable jury could not conclude under the circumstances in this case that this delay in diagnosis constituted an adverse action.

With regard to the denial of Tolbert's request for an extension of STD benefits and workers' compensation benefits, courts in the Eleventh Circuit have found that losses or reductions in pay may constitute materially adverse employment actions. *See Davis*, 245 F.3d at 1240. The evidence indicates that Tolbert suffered financial hardships as a result of these denials. As such, a reasonable jury could conclude under these circumstances that a reasonable employee would be dissuaded from maintaining a claim of discrimination by these denials.

As part of her *prima facie* case, a plaintiff must also establish that a causal connection exists between her statutorily protected activity and the alleged adverse employment actions she suffered. *Furcron*, 843 F.3d at 1310. To do so, the plaintiff must prove that but-for the employer's desire to retaliate, she would not have suffered the adverse employment action. *Booth*, 757 F.3d at 1207. One way the plaintiff can establish a causal connection is if she can show sufficient evidence that the employer knew of her statutorily protected activity and that there was a close temporal proximity between this awareness and the adverse employment actions. *Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir. 2004); *see Clark County School Dist. v. Breeden,* 532 U.S. 268, 273 (holding that the temporal proximity must be "very close").

A claim of retaliation fails as a matter of law "[i]f there is a substantial delay between the protected expression and the adverse action in the absence of other evidence tending to show causation." *Higdon*, 393 F.3d at 1220. Tolbert argues that the adverse actions were taken in retaliation for her September 2013 EEOC charge. However, the adverse actions Tolbert complains of did not begin until November 2014, over a year after she filed her EEOC charge. *See Breeden,* 532 U.S . at 273-74 (finding that a three-and-a-half month passage of time between the protected activity and adverse action, without other evidence of causation, is too long for the purposes of establishing the causal link.)[7] This temporal gap between the activities is too great for this Court to find a causal link.

Even if Tolbert could establish temporal proximity, Tolbert has failed to adduce any evidence that any decision maker involved with her medical treatment for her November 2014 accident, her request for an extension of STD benefits, her workers' compensation claims, or her misdiagnosis was aware of her EEOC charges or her 2012 informal complaint. *See Raney v. Vinson Guard Serv., Inc.*, 120 F.3d 1192, 1197 (11th Cir.1997) ("[I]n a case involving a corporate defendant the

---

[7]     Tolbert does not make an argument for or present any evidence of a causal link between her 2015 EEOC charge and the misdiagnosis of her CTS in 2017 or the denial of workers' compensation benefits in 2017.

plaintiff must show that the corporate agent who took the adverse action was aware of the plaintiff's protected expression....") In regard to Tolbert's workers' compensation claim, the evidence does not indicate that MBUSI was at all involved in the workers' compensation decision. An independent third party administrator ("TPA") runs MBUSI worker's compensation program, and there is no evidence that MBUSI informed the TPA about Tolbert's charges. Tolbert merely argues that she was treated differently because she filed an EEOC charge. This argument does little to carry Tolbert's burden of establishing her *prima facie* case. Tolbert has failed to establish her *prima facie case* because there is no causal link between her protected activity and an adverse action. MBUSI is entitled to summary judgment.

## B. Legitimate, Nondiscriminatory Reason

If a Title VII plaintiff makes a *prima facie* case for retaliation, the burden of production then shifts to the defendant to articulate legitimate, nondiscriminatory reasons for its actions. *Brown*, 597 F.3d at 1181 (quoting *Bryant*, 575 F.3d at 1308). The employer's burden at this stage is "exceedingly light." *Perryman v. Johnson Prods. Co.*, 698 F.2d 1138, 1142 (11th Cir. 1983). If the employer articulates one or more such reasons, even if it does not "persuade the court that it was actually motivated by the proffered reasons...then the presumption of discrimination is rebutted, and the burden of production shifts to the plaintiff to offer evidence that

the alleged reason of the employer is a pretext for illegal discrimination." *Brown*, 597 F.3d at 1174 (quoting *Tex. Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 254 (1981)) (internal citations and quotation marks omitted).

MBUSI has articulated legitimate, nondiscriminatory reasons for its actions. First, MBUSI asserts that it does not require individuals to be treated by the plant doctor before seeking care elsewhere, but that those refusing medical treatment at the plant and seeking to leave before receiving treatment are asked to sign a statement acknowledging the refusal of treatment. Accordingly, MBUSI asked Tolbert to sign a statement acknowledging she was refusing care. Moreover, MBSUI has asserted that its general practice is to cancel any ambulance that was called for an employee if there is no immediate medical risk, and to transport that employee in one of its security trucks instead. Here, MBUSI asserts that Tolbert's injury did not present an immediate medical risk and thus did not warrant her transportation in an ambulance. Additionally, MBUSI has asserted that Tolbert's STD benefit extension was initially denied because her paperwork was not timely. MBUSI has also indicated that Tolbert's initial misdiagnosis by an occupational therapist was corrected a few weeks later by the plant doctor. Furthermore, MBUSI has pointed to evidence that it was not responsible for the denial of Tolbert's workers' compensation claims because an independent third party

administrator ran its workers' compensation plan. MBUSI has thus proffered legitimate, nondiscriminatory reasons for its actions concerning Tolbert.

## C. PRETEXT

Once a legitimate, nondiscriminatory reason is proffered, Tolbert is required to show that MBUSI's proffered reasons were pretextual. In order to show pretext, a plaintiff must "demonstrate that [the defendant's] proffered reason was not the true reason for the employment decision . . . . [The plaintiff] may succeed in this either directly by persuading the court that a discriminatory reason [or retaliatory motive] more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Jackson v. State of Alabama State Tenure Comm'n*, 405 F.3d 1276, 1289 (11th Cir. 2005); *Burdine,* 450 U.S. at 256. A plaintiff survives summary adjudication if she produces sufficient evidence to allow a reasonable factfinder to disbelieve the employer's articulated reasons for its decisions. *Jackson*, 405 F.3d at 1289; *Howard v. BP Oil Co.,* 32 F.3d 520, 525-26 (11th Cir. 1994). The plaintiff must show sufficient "weaknesses or implausibilities" in the employer's articulated reasons. *Rioux v. City of Atlanta,* 520 F.3d 1269, 1278 (11th Cir. 2008).

Tolbert has failed to point to any evidence from which a reasonable jury could conclude that MBUSI's legitimate, non-discriminatory reasons were

pretextual. Instead, Tolbert merely questions the wisdom of MBUSI's decisions and speculates that MBUSI had an improper motive. This is insufficient to show pretext as MBUSI did not deviate from its medical treatment policies or procedures. *See Hurlbert v. St. Mary's Health Care Sys.*, Inc., 439 F.3d 1286, 1299 (11th Cir. 2006) ("an employer's deviation from its own standard procedures may serve as evidence of pretext").

Furthermore, there is no evidence indicating that MBUSI's reasons for denying of Tolbert's STD or workers' compensation benefits were pretextual. The evidence supports MBUSI's explanation for the denial of Tolbert's STD benefits because they were restored upon receipt of Tolbert's completed paperwork. Additionally, although Tolbert alleges that the denials of workers' compensation benefits were wrongful, she has produced no evidence that indicates that her claims were otherwise valid or that MBUSI acted in bad faith or in any way impaired her claims. *See Riccard v. Prudential*, 307 F.3d 1277, 1293 (11th Cir. 2002). Therefore, Tolbert has both failed to make a *prima facie* case or show that MBUSI's legitimate, nondiscriminatory reasons for its actions were pretextual. As such, MBUSI is entitled to summary judgment on Tolbert's remaining claims.

### D. JUDICIAL ESTOPPEL

Even if the Court were to find that Tolbert's claims were otherwise valid, her claims would be barred by judicial estoppel. "Judicial estoppel is an equitable doctrine invoked at a court's discretion." *Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282, 1285 (11th Cir. 2002) (citing *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001)) *overruled in part on other grounds by Slater v. U.S. Steel Corp.,* 871 F.3d 1174 (11th Cir. 2017) (en banc). Application of the judicial estoppel doctrine prevents a party from "asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding." *Burnes*, 291 F.3d at 1285 (*quoting* 18 James Wm. Moore et al., *Moore's Federal Practice* § 134.30, p. 134–62 (3d ed. 2000)). The purpose of the doctrine is "to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment." *New Hampshire*, 532 U.S. at 749–50. Because judicial estoppel protects the process, not a specific party, the one asserting the doctrine need not show that it detrimentally relied on the other party's previous assertions or even that it was involved in the previous proceeding. *Burnes*, 291 F.3d at 1286.

The Eleventh Circuit has established two factors which predominate in applying judicial estoppel to a particular case. *Burnes*, 291 F.3d at 1285 (noting that the "two factors applied in the Eleventh Circuit are consistent with the Supreme Court's instructions" in *New Hampshire*); *Barger v. City of Cartersville*, 348 F.3d

1289, 1293 (11th Cir. 2003) *overruled in part on other grounds by Slater*, 871 F.3d 1174. First, a party's allegedly inconsistent position must have been "made under oath in a prior proceeding." *Burnes*, 291 F. 3d at 1285 (quoting *Salomon Smith Barney, Inc. v. Harvey*, 260 F.3d 1302, 1308 (11th Cir. 2001)). Second, the "inconsistencies must be shown to have been calculated to make a mockery of the judicial system." *Id.* "[T]hese two enumerated factors are not inflexible or exhaustive; rather, courts must always give due consideration to all of the circumstances of a particular case when considering the applicability of this doctrine." *Id.* at 1286.

A debtor seeking protection under the bankruptcy laws is required to disclose all assets, or potential assets, to the bankruptcy court by filing a schedule of assets and a statement of the debtor's financial affairs. 28 U.S.C. § 521(1). "[T]he importance of full and honest disclosure cannot be overstated." *Burnes*, 291 F.3d at 1286 (quoting *Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 362 (3d. Cir. 1996)). The Eleventh Circuit "has emphasized the importance of full and honest disclosure in bankruptcy proceedings, stating that it is 'crucial' to the system's 'effective functioning.'" *Robinson v. Tyson Foods, Inc.*, 595 F.3d 1269, 1274 (11th Cir. 2010) (quoting *Burnes*, 291 F.3d at 1286). This duty to disclose "applies to proceedings under Chapter 13 and Chapter 7 alike" and "is a

continuing one that does not end once the forms are submitted to the bankruptcy court; rather, a debtor must amend her financial statements if circumstances change." *Id.* Full disclosure is particularly important because "creditors rely on a debtor's disclosure statements in determining whether to contest or consent to a no asset discharge. Bankruptcy courts also rely on the accuracy of the disclosure statements when considering whether to approve a no asset discharge." *Burnes*, 291 F.3d at 1286. As such, a debtor's failure to amend her asset schedule "to reflect a pending claim while simultaneously [pursuing] that claim in another court of law constitutes inconsistent positions under oath." *Robinson*, 595 F.3d at 1275.

Tolbert filed for Chapter 13 bankruptcy protection on August 2, 2016. Although Tolbert had pending EEOC charges, she did not include these claims in her schedule. Moreover, when Tolbert filed this action in 2017 she did not amend her schedule to include these claims. Therefore, Tolbert took inconsistent positions under oath by simultaneously pursuing her claims of discrimination all while omitting them from her bankruptcy proceeding.

Having established that Tolbert has adopted inconsistent positions, the Court must evaluate whether these inconsistences were "calculated to make a mockery of the judicial system." *Burnes*, 291 F. 3d at 1285. This is a question of intent. The Eleventh Circuit has stated that judicial estoppel may only apply in

situations involving intentional contradictions, "not simple error or inadvertence." *Id.* at 1286. To determine whether the plaintiff "intended to make a mockery of the judicial system, a district court should consider all the facts and circumstances of the case." *Slater*, 871 F.3d at 1176. Factors to be considered by the district court include:

> the plaintiff's level of sophistication, whether and under what circumstances the plaintiff corrected the disclosures, whether the plaintiff told [her] bankruptcy attorney about the civil claims before filing the bankruptcy disclosures, whether the trustee or creditors were aware of the civil lawsuit or claims before the plaintiff amended the disclosures, whether the plaintiff identified other lawsuits to which [she] was party, and any findings or actions by the bankruptcy court after the omission was discovered.

> *Id.* at 1185.

Here, Tolbert is a college educated individual, who was represented by an attorney in her bankruptcy proceeding. Although the parties debate whether Tolbert told her bankruptcy attorney about her EEOC charges and retaliation claims, the undisputed record indicates that Tolbert did disclose other pending claims that she had, including her workers' compensation claims. Moreover, Tolbert's deposition testimony indicates that she knew of her claims and was aware of the requirement to disclose all pending claims but "didn't see a need" to disclose her claims. (Doc. 26 Ex. A. at 15, 20-21.) Tolbert did not reveal her EEOC

charges throughout the pendency of her bankruptcy. Similarly, Tolbert did not disclose this action to the bankruptcy court, even though her bankruptcy was still pending. After her bankruptcy was dismissed in March 2018, Tolbert reached a settlement with MBUSI and as a result dismissed all but one of her pending claims in this case, effectively hiding the proceeds of this case from the bankruptcy court and her creditors. These actions taken together indicate intentional conduct, not inadvertence, by Tolbert. Therefore, the Court finds that Tolbert is judicially estopped from asserting her claims and MBUSI is entitled to summary judgment.

## IV. CONCLUSION

For the reasons stated above, Defendant's Motion for Summary Judgment (doc. 25) is due to be GRANTED and Tolbert's claims DISMISSED WITH PREJDICE. An Order consistent with this Opinion will be entered separately.

**DONE** and **ORDERED** on November 19, 2018.

L. Scott Coogler
United States District Judge

195126